UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALL PRO CAPITAL FUNDING LLC, a Delaware limited liability company, | Case No.: 25-cv-01076-CAB |
| Plaintiff and Counterclaim Defendant, | Judge Christopher A. Boyko |
| vs. | |
| NORTHEAST OHIO NEIGHBORHOOD HEALTH SERVICES, INC., an Ohio corporation, | |
| Defendant and Counterclaim Plaintiff. | |

**PLAINTIFF ALL PRO CAPITAL FUNDING LLC'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM
AGAINST ALL PRO CAPITAL FUNDING LLC**

NEONHS's[1] opposition [Dkt. No. 26] (the "Opposition") to All Pro Capital's Motion to Dismiss [Dkt. No. 23] is misleading and distorts legal and equitable principles in an effort to delay this proceeding. NEONHS does not have standing to bring its Counterclaim. Moreover, NEONHS's requested relief ignores the fundamental tenets of secured transactions law. If, contrary to applicable law, the Court allows NEONHS to clawback the Alleged Transfer for distribution to NEONHS's creditors *according to priority*, then All Pro Capital (first in priority), with its perfected first lien security interest in all of NEONHS's assets, would be the only recipient of any portion of the clawed-back Alleged Transfer. This is precisely why avoidable preference concepts are not applicable to secured lenders.

---

[1] All terms not otherwise defined herein will have the meaning given to them in the Motion to Dismiss.

1

## I. NEONHS LACKS STANDING TO BRING ITS COUNTERCLAIM

The Parties do not dispute the basic elements required for a plaintiff to demonstrate standing (Mot. at 3-4; Opp. at 6-7); however, NEONHS's application of the facts to those elements fails. Ohio law does not create the type of duty to creditors that would grant NEONHS standing to sue for its own alleged fraudulent or preferential transfers, and bankruptcy law is not applicable to the Counterclaim. Further, NEONHS cannot manufacture standing by improperly shifting the burden of proof on the standing requirement to All Pro Capital, purchasing a claim against itself, or creating a fictional remedy that would ultimately benefit All Pro Capital.

### A. NEONHS's Reliance on the Trust Fund Doctrine in Support of Its Standing Argument Is Misguided.

NEONHS incorrectly asserts that long-settled Ohio law recognizes a fiduciary duty owed to creditors by an insolvent corporation as the basis for NEONHS's standing to bring the Counterclaim (Opp. at 7). In support of this proposition, NEONHS cites to *Mills Fence Co., LLC v. Kinne*, and specifically the references therein to the holdings of *Thomas v. Matthews*, 94 Ohio St. 32, 113 N.E. 669 (1916), which held "directors ... stand in the relation of trustees to the creditors [during insolvency]" and *Rouse v. Merchants' Nat. Bank*, 46 Ohio St. 493, 504, 22 N.E. 293, 297 (1889), which found that "in equity the corporate property becomes the property of the creditors, and their equities are equal." The court in *Kinne*, however, declined to follow the *Matthews* and *Rouse* reasoning and instead methodically rejected each of these propositions based on applicable law. *Kinne*, in fact, held that "[b]ased on the caselaw above, we cannot say that directors of a defunct nonprofit corporation owe the corporation's creditors fiduciary duties." *Mills Fence Co., LLC v. Kinne*, 2025-Ohio-2247, 2025 WL 1778821 ¶ 20.

The holding of *Matthews* is directly contradicted by basic principles of corporate law and the Ohio General Corporation Law, which makes clear that a director, in considering what is in

the best interest of a corporation may, but is not required to, consider the interest of creditors. *See* Ohio Rev. Code Ann. § 1701.59(F) ("[i]n addition, the director may, in the director's discretion, consider . . . (1) the interests of the corporation's employees, suppliers, creditors, and customers); *see also Kinne*, 2025-Ohio-2247, ¶16 (1st Dist.) ([*Amcast*] explained that in the years since *Matthews* and other like cases, the General Assembly enacted applicable statutory provisions, and in those statutory provisions, it made directors' consideration of creditors' interests permissive."); *Washington Penn Plastic Co., Inc. v. Creative Engineered Polymer Products, LLC*, No. 5:06CV1224, 2007 WL 2509873, at *3 (N.D. Ohio Aug. 30, 2007). Indeed, Ohio bankruptcy courts and Ohio federal courts have both since held that *Matthews'* holding was made on "much narrower grounds" than its "broad pronouncement[] might suggest." *In re Amcast Indust. Corp.*, 365 B.R. 91, 106-07 (Bankr. S.D. Ohio 2007); *Custom Assocs., L.P. v. VSM Logistics, LLC*, 2020-Ohio-2994, 154 N.E.3d 178 (11th Dist.).

NEONHS's argument thus fails even according to its own flawed assertions that fiduciary duties can give a debtor-transferee standing to assert avoidance actions because Ohio law does not impose upon corporations or their directors broad fiduciary duties to creditors during insolvency. Accordingly, NEONHS cannot rely on the language of *Matthews* or the "trust fund doctrine" to support its assertion of standing.

### B. NEONHS Cannot Avail Itself of Debtor-In-Possession Rights and Bankruptcy Principles Without Filing for Relief Under the Bankruptcy Code.

NEONHS's misguided reliance on bankruptcy principles to manufacture standing fail. All Pro Capital does not dispute that in a proceeding under the United States Bankruptcy Code (the "Bankruptcy Code"), a trustee or debtor-in-possession has standing to bring avoidance actions. NEONHS, however, is neither a trustee nor a Debtor-in-Possession, and NEONHS has not filed a petition for relief under the Bankruptcy Code. Accordingly, the Bankruptcy Code's well-

3

developed statutory framework of laws addressing standing specifically in the context of avoidance actions, including section 550 of the Bankruptcy Code which grants a trustee or debtor-in-possession the status of a hypothetical lien creditor, or section 1107(a) of the Bankruptcy Code, which grants Debtors-in-Possession the powers of a trustee, are wholly inapplicable to the matters before this Court. Those extraordinary–and undeniably practical–statutory provisions are exclusive to proceedings under the Bankruptcy Code. NEONHS cannot simultaneously seek to avoid any form of court supervised insolvency proceeding, a receivership action or otherwise, while also seeking to obtain relief exclusively available under the Bankruptcy Code.

### C. NEONHS Cannot Shift the Burden of Proving Standing to the Defendant.

NEONHS concedes "[t]he [counterclaim] plaintiff bears the burden of alleging sufficient facts to demonstrate standing." (Opp. at 6). It has failed to do so but argues that All Pro Capital failed to provide authority that "an insolvent entity that stands as a trustee/fiduciary to its creditors is not qualified to bring such claims in that capacity." (Opp. at 7). NEONHS' caselaw is inapposite, and its standing argument fails. NEONHS cannot support the concept that it somehow has standing as a trustee/fiduciary of its other creditors outside of bankruptcy.

### D. NEONHS Cannot Manufacture Standing by Purchasing a Claim Against Itself

Lastly, NEONHS' cannot cure its lack of standing by purchasing a claim against itself to address the "highly technical" standing requirement.[2] NEONHS's proposal further illustrates the absurdity of its Counterclaim, because it is impossible for NEONHS to acquire a claim against itself. If a debtor and a creditor have the same identity, then the debt is extinguished. *See Troon*

---

[2] Far from highly technical, standing is a requirement characterized by the Supreme Court as a "bedrock constitutional requirement that this Court has applied to all manner of important disputes" and foundational to the "role of the courts in a democratic society." *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 374, 379 (2024).

4

*Mgt., Ltd v. Adams Family Trust*, 2023-Ohio-3489, ¶ 30 (4th Dist.). As stated by the *Troon* court, "the principal that a debtor cannot owe itself money or sue itself is both a legal truism and a matter of common sense." *Id*. Accordingly, any debt acquired by NEONHS against itself would be automatically extinguished thereby negating its impact on standing.

    **E.    NEONHS Cannot Have Standing because There Is No Relief that can Address Its Alleged Injury**

Standing requires there to be a likelihood that an injury can be addressed by a decision in the plaintiff's favor. *See Helwig v. Concentrix Corp.*, Case No. 2-cv-920, 2021 WL 1165719, at *2 (N.D. OH. Mar. 26, 2021) (Boyko, J.) (citing *Vt. Agency of Nat. Res. V. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)). NEONHS takes the untenable position that by obtaining relief under its Counterclaim, NEONHS will protect its other unsecured creditors from its own preferential treatment and fraudulent conduct related to the Alleged Transfer to All Pro Capital. (Opp. at 6-7). This reasoning, however, fails to acknowledge that All Pro Capital is also a creditor of NEONHS, and that to the extent NEONHS owes any fiduciary duties to creditors, such duty would also extend to All Pro Capital to the same extent. Further, All Pro Capital, with its undisputed first priority lien on NEONHS's assets, would be the first recipient of any redistribution of funds recovered pursuant to the Counterclaim. Accordingly, the Counterclaim provides NEONHS no potential relief.

    **II.    NEONHS CANNOT WIN ON THE MERITS**

Even if NEONHS has standing, its Counterclaim fails as a matter of law, and there are no material facts in dispute. Preference and constructive fraudulent transfer actions are designed to prevent one creditor from benefiting at the expense of others, either through fraud or by being preferred to other similarly situated creditors. *See* O.R.C. 1336.04, 1336.05; 1313.56 and 1313.57. All Pro Capital, however, is not similarly situated to general unsecured creditors. All Pro Capital

is a secured creditor with a first lien security position (Cmpl., Exs. E, F; Countercl. at ¶ 12; Opp. at 5). Payments or other transfers to a perfected secured creditor cannot be avoided as preferential or fraudulent transfers. *See Melamed v. Lake County Nat'l Bank*, 727 F.2d 1399 (6th Cir. 1984); *In re Nat'l Century Fin. Enterprises, Inc.*, *Inv. Litig.,* 783 F.Supp.2d 1003, 1030 (S.D. Ohio 2011); *In re Lorenz*, Case No. 09-31913, 2011 WL 13281776, at *13 (Bankr. S.D. Ohio Mar. 8, 2011). "When a transfer results in a dollar for dollar reduction in the debtor's liability to the secured creditor—[it] does not hinder, delay, or defraud lower priority creditors because any such transfer does not diminish the net amount that would be available for distribution to unsecured creditors." *Id*. In Ohio, as in other jurisdictions, perfected secured lenders are entitled to priority in payment over general unsecured creditors. *See* O.R.C. § 1309.615(a)(2).

Here, there is no issue of material fact for the Court to decide. NEONHS admits that the outstanding loan balance is secured by a lien on all of NEONHS's assets (Countercl. at ¶ 12; Opp. at 5) and that the Alleged Transfer reduced NEONHS's debt "dollar-for-dollar" (Countercl. at ¶ 14). Accordingly, as a matter of law, any transfer of NEONHS's assets to All Pro Capital to paydown the outstanding secured obligation cannot be a fraudulent transfer or subject to preference actions. NEONHS makes much of the fact that All Pro Capital may be undersecured (*i.e.* the value of the collateral securing the obligation is less than the obligations due under the loan) but that does not change the fact that All Pro Capital is nonetheless secured up to the value of the collateral. The Alleged Transfer was perfected cash collateral held in the Lockbox Account for the benefit of All Pro Capital (Mot. at 2; Countercl. at ¶¶ 12, 14) and was used to pay down a senior secured obligation. Therefore, NEONHS cannot have defrauded its other creditors by making the Alleged Transfer nor preferred All Pro Capital to other creditors, because, pursuant to Ohio's priority scheme, such creditors would not be entitled to payments from funds in the Lockbox Account prior

to payment in full of the amounts due to All Pro Capital. Accordingly, even if NEONHS had standing to assert its Counterclaim, its claim fails as a matter of law.

## III. CONCLUSION

NEONHS's Counterclaim twists the doctrine of standing, the principles underlying fraudulent transfer and preference law, the law of secured transactions, and basic principles of common sense to persuade this Court to keep alive an improper counterclaim. Nothing NEONHS has pled can change that All Pro Capital maintains a first-priority, perfected lien against all assets of NEONHS, that NEONHS does not have standing to pursue fraudulent transfer or preference actions as the debtor, or that any transfer NEONHS made to All Pro Capital cannot be avoided as a preferential or fraudulent transfer. Furthermore, it's clear that even if NEONHS has standing and prevails on an avoidance action, it would then have to immediately transfer the funds to All Pro Capital as the senior secured lender with priority payment rights over all other creditors. Accordingly, All Pro Capital respectfully requests that the Court grant its Motion to Dismiss.

Date: October 9, 2025.	Respectfully Submitted,

/s/ *Steven A. Friedman*
Peter R. Morrison (0085127)
Steven A. Friedman (0060001)
peter.morrison@squirepb.com
steven.friedman@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
1100 Key Tower, 127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
*Attorneys for All Pro Capital*

**CERTIFICATE PER LOCAL RULE 7.1**

I hereby certify that **PLAINTIFF ALL PRO CAPITAL'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM AGAINST ALL PRO CAPITAL FUNDING LLC** conforms to the length limitations in Rule 7.1 of the Local Rules for the United States District Court, Northern District of Ohio by being less than ten pages in length. I further certify that, to the best of my knowledge, the above-captioned case has not been assigned a track.

                                                *s/ Steven Friedman*
                                                Steven Friedman
                                                *One of the Attorneys for All Pro Capital*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of October 2025, the foregoing **PLAINTIFF ALL PRO CAPITAL'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM AGAINST ALL PRO CAPITAL FUNDING LLC** was filed electronically and is available by operation of the Court's electronic filing system.

*s/ Steven Friedman*
Steven Friedman

*One of the Attorneys for All Pro Capital*