# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ALL PRO CAPITAL FUNDING LLC, a**
**Delaware limited liability company,**

           **Plaintiff**

vs.

**NORTHEAST OHIO**
**NEIGHBORHOOD HEALTH**
**SERVICES, INC., an Ohio corporation,**

           **Defendant.**

)
)
)
)
)
)
)
)
)
)
)

**Case No.: 25-cv-01076-SO**

---

## ORDER APPOINTING RECEIVER

This cause coming to be heard on the Emergency Motion for the Appointment of a Receiver (the "Motion").

The Court hereby finds that:

1.      Defendant, Northeast Ohio Neighborhood Health Services, Inc., (the "Defendant" or "NEONHS") is indebted to All Pro Capital Funding LLC (the "Plaintiff" or "All Pro Capital") for more than $8,613,222.50, inclusive of accrued and unpaid interest through May 14, 2025, but excluding any other fees and expenses, and that NEONHS is in default of its obligations to All Pro Capital under the applicable Loan Documents[1];

2.      The appointment of a Receiver is appropriate and necessary to preserve, manage and dispose of the Property (defined below) in accordance with said Loan Documents and to prevent waste; and

---

[1] Capitalized terms used herein that are not otherwise defined herein shall have the same definition as in the Motion.

3.     John K. Lane is (i) a resident of Ohio; (ii) a disinterested person; and (iii) an experienced and qualified receiver.

Accordingly, after due consideration and for good cause shown, said Motion is hereby GRANTED.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**Appointment of Receiver**.  John K. Lane has the necessary qualifications to serve as the receiver.  He is immediately appointed as Receiver over the Property.

**Effective Date**. This Order and the injunction contained within will be in full force and effect as of the date it is entered by the Clerk of this Court. The appointment of the Receiver, and the powers and authority associated therewith, will become effective upon the filing of the Receiver's oath and bond required herein.

**Purpose of Receivership**. The purpose of this receivership is as follows, subject to the terms and conditions of this Order:

I.    The Receiver may, as appropriate in its judgment, evaluate the condition and status of the Property, to document matters pertaining to its condition for the various parties in interest.  In particular, the Receiver will develop, if necessary after investigation and review, an appropriate rehabilitation plan to bring the Property back to a usable and marketable state, in a timely manner.

II.   The Receiver will take control of the Property and will endeavor to maintain the Property in a safe condition throughout the course of the receivership and the sale process.

III.  The Receiver may, after completion of the initial property evaluation, market the Property for sale to a bona fide owner, subject to Plaintiff's consent.

IV.   To the extent the marketing process is successful, the Receiver will negotiate and finalize the sale of the Property to a purchaser(s), subject to Plaintiff's consent and upon approval of this Court.

**Receivership Shall Not Impair Plaintiff's Rights**. Notwithstanding anything to the contrary in this Order, Plaintiff shall maintain all rights to the Property and its rents, issues, profits, and revenues as provided under the Loan Documents and applicable law, including the priority of its Mortgage and other security interests. Neither this Order nor the pendency of the receivership shall prejudice Plaintiff's foreclosure of the Mortgage, or any action by Plaintiff under any security agreement or the Uniform Commercial Code with respect to any personal property. The Receiver shall not impede, interfere with, or frustrate the foreclosure or foreclosure sale process.

**Approval of Receivership Advances**. The Receiver's and Plaintiff's proposal for financing of receivership advances is approved as follows:

I. The Receiver is authorized but not directed to apply for and obtain funding advances for necessary and appropriate receivership expenses from Plaintiff (each, a "Receivership Advance") in the event that the operating cash flows of the Defendant are not adequate to fund the Receiver.

II. Plaintiff is authorized, but not required under any circumstance, to approve some or all of any of Receiver's requests for Receivership Advances.

III. Any Receivership Advance approved and advanced by Plaintiff and received by the Receiver shall be treated as an administrative expense of this case, without further order of this Court.

**Powers of Receiver**. Without limiting the generality of the foregoing, the Receiver shall be vested with the general power and authority of receivers under applicable Ohio and federal law, including the authority and power described in O.R.C. § 2735.01, *et seq.*, over the following:

I. **Custody and Control**. The Receiver will take exclusive custody and control of the Property, including all improvements and amenities at the Property. The Receiver may take all steps necessary to secure the Property, including entering the Real Property, changing locks, and taking such other action as may be necessary to establish control over the Real Property or any of the Property, subject to the terms and conditions herein applicable to payment of Receivership Expenses (as further defined below).

II. **Protect and Preserve the Property**. Subject to the terms and conditions herein applicable to payment of Receivership Expenses (as defined herein), the Receiver may: i) retain a property management company (the "Property

Manager") to manage the Property under commercially reasonable terms, ii) take all emergency actions necessary in its judgment to preserve, protect and manage the Property in order to preserve its value for the benefit of the lien holders; iii) pay all utilities, expenses or other obligations to suppliers or servicers in the ordinary course of business; iv) to take all reasonable measures necessary to operate and maintain the Project (defined below) in accordance with federal, state, and local laws and regulations; v) operate the Project under the Project's applicable licenses and certificates issued by the state; vi) to maintain all permits, licenses, certifications, and other authorizations as required by federal, state, and local law; monitor price and cost reimbursements or payment levels in the service area(s) of the Project and, where appropriate, seek approval of appropriate changes to patient rates or payment schedules applicable to the Project; vii) secure the continuation or renewal of any license agreements that affect the Project, including but not limited to any licensure or provider agreement which affects the Project; and vii) use commercially reasonable means to maintain the Property in compliance with all local building, housing, air pollution, sanitation, health, fire, zoning, or safety codes, ordinances, resolutions, and regulations. The Receiver is authorized to enter into contracts for completion of such repairs.

III. **Study of Property**. Subject to written approval of Plaintiff, the Receiver is authorized to take all actions required to determine the current condition of the Property, including conducting studies of (i) the physical structure of the improvements at the Real Property and whether it is sound for continuing habitation; (ii) the status of the mechanicals and trade components of the improvements on the Real Property, including the elevators, HVAC, electrical, water, and plumbing, including the costs for repair or replacement of those items; and (iii) any other study of the viability of the Real Property or any of the Property that the Receiver deems appropriate. Subject to written approval of Plaintiff, the Receiver is empowered to hire any professional that the Receiver deems in its reasonable business judgment to be appropriate to conduct these studies, and the Receiver may pay those professionals without further approval of the Court, provided that the Receiver's hiring of those professionals and budget for payment is within the bounds of the approved Budget. To the extent that the Receiver deems it appropriate, the Receiver may restrict sharing the results of the foregoing studies to Plaintiff, and to any other person or entity that the Receiver deems appropriate provided that a non-disclosure agreement is signed. The Receiver may also waive the confidentiality of any report as it deems appropriate. If the Receiver seeks to maintain the confidentiality of any report, the Receiver may file the report with the Court under seal without obtaining any further order.

IV. **Employees. Consistent with the terms of this Receiver Order,** to retain, employ, or continue to employ, through Defendant or any other entity currently employing such persons and consistent with any applicable

existing agreements, custodians, janitors, maintenance workers, assistants, accountants, medical staff, nurses, certified nurse aides, direct support personnel and other professionals and employees, property managers, leasing agents, and administrative support (such as management, billing, and collection personnel), all as deemed reasonably necessary, appropriate, or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver by this Order. To recruit, train, and supervise all necessary employees that the Receiver is otherwise authorized to retain or employ under this Order, including the institution and amendment from time to time of general salary scales, personnel policies, and appropriate fringe benefits for all employees, which may include pension and profit sharing plans, insurance benefits and holiday, vacation, personal leave, and sick leave policies.

V.      **Collection of Revenues**. Subject to the terms and conditions herein applicable to payment of Receivership Expenses and Plaintiff's rights under the Loan Documents, the Receiver will collect the profits, rents, revenues, and all other income and rights to payment of any nature whatsoever from the Property (collectively, and regardless of whether earned before or after entry of this Order, the "Revenues"), and pay from the Revenues all Receivership Expenses (as defined below). The Receiver has the authority to receive and endorse as necessary, present for payment and/or collect any check, money order, credit card account or other form of payment payable as rent or other proceeds in relation to the Property. The Defendant, having earned their revenue from the Property, must immediately turn over to the Receiver all bank account information and pay to the Receiver all amounts in the bank accounts under the Defendant's name related to the Property or derived from the Property, as well as any amount in accounts under the control of any property manager. Subject to Plaintiff's rights under the Loan Documents, the Receiver has the power and authority to issue demands for the freezing and turnover of funds upon any financial institution which the Receiver has determined in its reasonable judgment is a depository of funds belonging to, or arising from, the Property, whether or not those accounts are titled in the name of the Defendant. All financial institutions are directed to deliver the deposits to the Receiver and the records as the Receiver may reasonably request with respect to those accounts. The Receiver may indemnify the financial institution upon whom such demand is made, and is empowered to open or close any such accounts.

VI.     **Insurance Policies**. The Receiver shall have the authority without further order of this Court to maintain or purchase insurance from any agent or carrier, of any type reasonably necessary or desirable, on all the Property, subject to maintaining adequate coverage appropriately and naming appropriate loss payees as any properly perfected security interests provide within the corresponding security agreement.

VII.    **Insurance Claims**. The Receiver will assume the Defendant's rights and obligations with respect to any insurance claim on the Property that is pending or to be made, and Defendant and its agents, including the insurance companies, shall cooperate with the Receiver in all aspects of having the Receiver take control of those claims. The Receiver shall further have the exclusive right to enter into and negotiate contracts with vendors related to the repair or remediation required in connection with any insurance claim. With Plaintiff's approval, the Receiver is authorized to terminate any pre-receivership contract related to or involving an insurance claim or insurance proceeds. This paragraph shall not in any manner prejudice any of the rights and remedies of Plaintiff under any insurance policy on the Property or under the Loan Documents. Plaintiff shall retain all rights and remedies as loss payee under any insurance policy on the Property. Additionally, notwithstanding anything herein to the contrary, Plaintiff is expressly authorized to exercise all rights and remedies under the Loan Documents, including without limitation the right to adjust, settle and/or compromise any insurance claim and any insurance proceeds will be paid directly to Plaintiff and may be applied by Plaintiff in any order it determines, including to pay the obligations under the Loan Documents.

VIII.   **Tenants and Leases**. The Receiver shall provide written notice of the Receiver's appointment to all tenants of the Real Property within 10 days following the Effective Date. The Receiver is authorized to modify or terminate existing leases or other occupancy agreements, and to enter into new leases or occupancy agreements, in the ordinary course of the business of the Real Property, and enforce leases and occupancy agreements and pursue eviction or forcible entry and detainer actions against defaulted tenants to recover possession of any portion of the Real Property.

IX.     **Termination of Pre-Receivership Contracts**. Immediately upon notice to all interested parties, the Receiver is authorized to terminate any pre-receivership contract that relates to the Property.

X.      **Pre-Receivership Employees**. The Receiver is authorized to retain, hire or discharge employees that work with or at the Property, without any liability to the Receiver.

XI.     **Receivership Expenses**. The Revenue (including proceeds of any Receivership Advance) of the Property, whether received by the Receiver or on deposit in any of the Defendant's accounts, may be applied to approved expenses pursuant to a written budget to be submitted by the Receiver and approved by Plaintiff (the "Budget"). The Budget shall include payment of all anticipated expenses and obligations coming due after the date of the Receiver's appointment as may be necessary or appropriate for such maintenance, protection, preservation or operation of the Property, or necessary expenses in carrying out the directions of this Order (collectively, the "Receivership Expenses"). Receivership Expenses

include, without limitation, all taxes and assessments, insurance premiums for the Property; utility expenses; operating expenses; lease obligations; interest on loans, and compensation for the Receiver and any professionals. Receiver shall provide an initial proposed budget to Plaintiff within 45 days after the Effective Date, and at least yearly after that. Upon Plaintiff's approval of the Budget, the Receiver is authorized to make payments of Receivership Expenses, as set forth in the Budget. The Receiver is authorized to pay necessary and appropriate Receivership Expenses until the first Budget is prepared and approved by Plaintiff.

XII.  **Expenditures Not Included In The Budget**. With regard to any repair or other expenditure in excess of $25,000 each month that is deemed necessary but not included in an approved Budget, the Receiver shall first notify Plaintiff within five days prior to incurring the expenditure and seek Plaintiff's consent to such expenditure prior to incurring or paying such expenditure. If, however, the Receiver and Plaintiff cannot come to an agreement with respect to such expenditure, the Receiver may file an application with the Court for authority to make such repair or incur such expenditure, together with acknowledgment of notice to Plaintiff of the time of hearing of said application. Plaintiff shall have the right to object to said application and be heard on such objection.

XIII.  **Revenue Not Used for Authorized Expenditures**. Any funds coming into the hands of the Receiver (excepting any funds from the Receivership Advances), which are not used for expenditures authorized by an approved Budget, in payment of approved Receiver's fees or expenses, or authorized by the Court, may be remitted to Plaintiff for credit against the outstanding balance of the indebtedness to Plaintiff, accompanied by an accounting of all income collected from the Property, and disbursements made by the Receiver (including any fees and disbursements paid to the Receiver or Receiver's counsel). Upon remitting funds to Plaintiff pursuant to this subparagraph, the Receiver shall file a Notice indicating the amount of funds remitted to the Plaintiff. Any funds received by Plaintiff from the Receiver pursuant to this paragraph shall be applied first to the costs and expenses of this action, then to any late charges and other applicable costs and fees, then to accrued but unpaid interest, and finally to principal and other amounts due under the Loan Documents.

XIV.  **Pre-receivership Liabilities**. The Receiver is not liable for any expenses or accounts related to the Property which were incurred prior to the effective date of this Order. The Receiver and the Property are also not bound by any existing management agreement affecting the Property. Notwithstanding the foregoing or anything that may be construed to the contrary, in the Receiver's discretion but subject to the approved Budget, the Receiver is authorized to (but is not obligated to) pay those expenses and accounts incurred prior to this Order (including, without limitation, tax, lease, mortgage, utility, and critical vendor obligations) to the extent that the

payment of any such pre-existing expense or account payable is necessary or desirable for the preservation of the Property.

XV. **Bank Accounts**. The Receiver may establish one or more new bank accounts for the receivership estate at the Receiver's discretion. Such accounts may be in the name of the Receiver for the benefit of the receivership estate, or in the name of the Defendant, in either case using the Defendant's FEIN. The Receiver will deposit all funds of the receivership estate into the receivership accounts and will make all payments and disbursements from the receivership estate from that account, and such funds shall not be commingled with other funds. Funds of the receivership are further authorized to be held in the trust account of any legal professional employed by the Receiver or in title company escrow.

XVI. **Sale of Assets**. The Receiver is authorized to market the Property for sale (at such time that the Receiver deems appropriate) but, in addition to those requirements set forth in 28 U.S.C. § 2001, will comply with all requirements of R.C. § 2735.04 for the sale of the Property. Upon request, the Receiver will provide Plaintiff with access to all sales, marketing and offer information. The Receiver shall obtain written approval of Plaintiff prior to entering into any proposed listing agreement or proposed sale contract. If a proposed sale contract is approved by Plaintiff, the Receiver must apply to the Court for permission to proceed with a sale. The details of such proposed transaction shall be set forth in the application, and the application shall be served on all necessary parties, including Plaintiff. The Receiver may, if it reaches an agreement with a buyer for any portion of the Collateral which constitutes personal and/or intangible property and Plaintiff consents to the terms and conditions of such sale, file a motion with the Court for the approval of such sale in accordance with the requirements of 28 U.S.C. §§ 2001 and/or 2004, as applicable. Notwithstanding the requirements of 28 U.S.C. § 2001(b), the Receiver shall be allowed to sell personal and/or intangible property through public or private sale(s), upon prior written approval of Plaintiff, and shall not be restricted by the private sale requirements of 28 U.S.C. §2001(b). Such sale shall be free and clear of all liens, claims and encumbrances against the property, and such liens, claims and encumbrances shall be transferred by operation of law to the proceeds of such sale in the same validity, priority and extent as existed immediately prior to such sale. Unless Plaintiff otherwise approves, the Receiver is only authorized to seek approval of a receiver's sale pursuant to R.C. § 2735.04 if Plaintiff has not filed a motion for judgement and decree of foreclosure .

XVII. **Employment of Professionals**. In addition to the Property Manager, the Receiver may choose and employ, upon notice and Court approval, such other professionals as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order, on the terms and conditions as the Receiver determines to be in

A-8

the best interest of the receivership estate. Notwithstanding this, the Receiver is authorized to engage the law firm of Miller, Canfield, Paddock and Stone, PLC.

XVIII. **Lawsuits and Settlements**. The Receiver is authorized to initiate, defend, negotiate, settle, or otherwise dispose of any claim or litigation that concerns the Property or Receivership estate; but any settlement is subject to Plaintiff's approval to the extent such settlement may affect Plaintiff's security interests in the Property or related interests of Plaintiff. The Receiver is further specifically authorized to pursue any claims or causes of action, on behalf of the Defendant, that the Receiver determines in its reasonable judgment to be appropriate and necessary, including without limitation, claims for fraudulent transfer. All fees and expenses related to any litigation initiated by the Receiver must be agreed upon in the Budget or otherwise approved by the Court.

XIX. **Tax Appeals**. The Receiver may initiate the appropriate proceedings or action to challenge the valuation of the Real Property or any Property for purposes of taxation, or defend any action brought against the Receiver in such capacity. The Receiver is authorized to retain special counsel for such cases on a reasonable and market- rate contingency fee basis, subject to Plaintiff's written approval.

XX. **Books**. The Receiver shall prepare and maintain complete books, records and financial reports of the income and expenses associated with the Property and receivership, and all other reasonably appropriate and necessary records.

XXI. **Receivership Taxes and Tax Returns.** The Receiver is authorized and directed to pay all current, past due, and, as the same become due and payable during the receivership, future real estate taxes, personal property taxes and any other taxes and assessments against the Property, so long as Revenues are sufficient to fund such payments. The Receiver is not required to prepare or file any tax returns related to the receivership estate and is not responsible for the preparation of any tax returns for the Defendant. The Receiver shall provide copies of operating statements to the Defendant, upon request and at the Defendant's cost for the preparation of tax returns. All Receiver's costs related to furnishing information to the Defendant for the completion of any tax returns are administrative expenses. The Receiver is permitted to retain funds necessary for tax services after the close of this case or prepay for those services as necessary.

XXII. **Licensing.** The Receiver is not required to obtain or maintain any license related to the receivership estate.

XXIII. **Sale Information.** To share information on the Property and the Project for the purpose of locating a third-party to operate the Project (a "New

Operator"), and to enter into an operations transfer agreement and any other necessary agreements, on behalf of Defendant and the Project, with such New Operator and execute any other agreements, forms, applications or other documents, on behalf of Defendant and the Project, including, without limitation, any necessary filings with the federal, state, or local government authorities and regulators, to facilitate such transfer to a New Operator to insure the uninterrupted care for the patients and the orderly transfer of Project operations to the New Operator, subject to the limitations and requirements of applicable laws and regulations. The selection of a New Operator, along with the compensation terms, duration, and other material terms of any contract with a New Operator, are subject to Approval.

XXIV. **Other Actions**. The Receiver may undertake all other actions, including, without limitation, executing documents on behalf of the receivership estate that are in its judgment, necessary or appropriate to accomplish the directions of this Order. The Receiver is further authorized to undertake any express statutory powers accorded to a receiver under Ohio law, unless otherwise limited by this Order or subsequent order of this Court.

**Delivery to Receiver**. Any person or entity served with a copy of this Order, within five business days of demand by the Receiver (or as to the Defendant or any person or entity under the control of or under common control with or otherwise affiliated with Defendant ("Defendant's Agents"), within five business days of the entry of this Order), are ordered to cooperate with the Receiver in the transition of the management of the Property and shall deliver or make available to the Receiver possession and custody of the Property including all of the following:

I.  All keys, including master alarm codes, access devices, and access codes affording entry upon or access to the Real Property, and a list of persons who to the Defendant's knowledge possess any of the foregoing which are not turned over to the Receiver;

II.  Any tenant ledgers/leases, including all amendments and renewals, pending or otherwise, together with communication/correspondence files and lease abstracts/summaries (if any), and tenant contact names and telephone numbers;

III.  All deposit accounts, including the petty cash fund, if any, into which deposits have been made and are currently being held, whether in the name of the Defendant or in any other name for the benefit of the Defendant, and account statements for the past year;

IV.     All security deposits, security deposit accounts, if any, and an accounting of all security deposits;

V.      A current aged account receivables or delinquency report and detailed rent roll;

VI.     An aged listing of all trade payables and other payables;

VII.    A copy of any records relating to operating expenses for the Property;

VIII.   A list of utilities, copies of utility bills for the larger of the last six months or the period of time for which there is a pending balance, and all utility account numbers;

IX.     Year-end 2020 through 2023 operating statement as well as a year-to-date 2024 operating statement and budgets for each of these years;

X.      All payroll records and employee files and applications pertaining to on-site employees of the Property;

XI.     An inventory of all equipment, furniture, vehicles and related titles, and supplies for the Property;

XII.    All existing service contracts, and a list of, and any and all documents pertaining to, any unpaid vendor or service provider invoices or record of work performed by any such vendors, including but not limited to copies of any and all mechanics' liens relating to the Property;

XIII.   All pending bids for contractor work, if any;

XIV.    All existing insurance policies for the Property, the assets of the Receivership estate, or maintained by the Defendant for or with respect to the Property, including contact information for the insurance agencies, brokers, and adjusters;

XV.     All tenant and vendor insurance certificates and loss runs and claims submitted in the past three (3) years, if any;

XVI.    Site plans, surveys, specifications, floor plans, drawings, measurements, etc., easements, access agreements, parking agreements, maintenance agreements, and other documents concerning access, use, or maintenance of the Property;

XVII.   Documents identifying or summarizing all pending litigation (excluding this action), pending administrative hearings, insurance claims, and tax appeals, as well as any documents pertaining to any violations of any applicable building or health and life safety codes and regulations;

XVIII.   All records and reports relating to the condition of the Property, any environmental studies and reports, all records required to be kept under applicable safety and environmental laws, and documents and information pertaining to any violations of any applicable building or health and life safety codes and regulations;

XIX.   All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies used at and associated with the Property and all passwords needed to access such software and computer files;

XX.   Email records maintained for the Property (and all off-site financial records of the Defendant or any property manager related to the Property) including, but not limited to, all records of the Defendant or any property manager concerning the Revenues, and the operation and management of the Property;

XXI.   All building plans, technical manuals for all systems, machinery or equipment on or a part of the Property together with operating procedures and current warranties in existence with respect to the Property;

XXII.   The names, addresses, telephone numbers and e-mail addresses for the key representatives of the Defendant, its property manager(s), managers, members, agents (including, but not limited to, all management companies engaged by the Defendant), and all of its respective employees in possession or control of any portion of the Property;

XXIII.   Information and passwords for all website and email hosting, domain name registration, social media, digital advertising, and other internet accounts related to the Property; and

XXIV.   Such other records pertaining to the management of the Property as may be reasonably requested by the Receiver.

**Property**. The "Property" means and includes (i) the real estate described on Exhibit A attached (the "Real Estate"); (ii) all fixtures, trade fixtures, improvements, tenant improvements, and other real property located in, upon, or attached to the Real Estate ("Fixtures"); (iii) all tangible and intangible property used or useable in connection with the Real Estate or business operations conducted therein and thereon (the "Project"), including without limitation any insurance premium refunds, insurance proceeds, condemnation awards, utility deposits and deposits of every other kind, causes of action, drawings, plans, specifications, escrow agreements, and other personal

A-12

property described in the Mortgage (the "Personal Property"); (iv) all permits, licenses, and contracts pertaining to the Real Estate or the Project; (v) all Revenue and claims to Revenue; (vi) any refund or reimbursement of taxes relating to the Real Estate or the Project, regardless of the period to which such refund or reimbursement pertains; (vii) all trade names, trademarks, and intellectual property owned or used by Defendant in connection with the Real Estate or the Project; (viii) all books, records, accounts, and documents that in any way relate to the Real Estate, the Project, or the Revenue; and (ix) all other property, estate, right, title, and interest of Defendant as described in the Mortgage and other Loan Documents.

**Patient Privacy.** This Order constitutes a Protective Order under the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA"). Receiver and the Receiver Representatives (defined below) shall be permitted to access confidential patient information as may be necessary or appropriate in fulfilling the Receiver's responsibilities under this Order. Receiver and the Receiver Representatives shall implement the following procedures to safeguard the confidentiality of protected health information ("PHI"), as defined under HIPAA:

I.     The Receiver and the Receiver Representatives are prohibited from using or disclosing the PHI for any purpose other than fulfilling the Receiver's responsibilities under this Order. The Receiver and Receiver Representatives shall only use the minimum necessary confidential information for such purposes.

II.    The Receiver and the Receiver Representatives shall implement appropriate safeguards to prevent review, use, or disclosure of PHI, including subjecting the Receiver and the Receiver Representatives to the same standards regarding confidentiality of patient records as Defendant under applicable law, including HIPAA.

III.   The Receiver and Receiver's Representatives shall mitigate (to the extent reasonably practicable) any harmful effect that is known to them from a use or disclosure of PHI by them in violation of the requirements of this Order.

IV.    The Receiver and Receiver Representatives may not make any paper or electronic copies of, or otherwise acquire, any PHI in the course of their

duties, such that it is not necessary for them to return or destroy the PHI received at the end of all litigation.

V.      The Receiver and Receiver Representatives shall require any other person or entity who the Receiver retains or employs, or with whom the Receiver contracts, or who otherwise acts as an agent for the Receiver, to abide by the same restrictions and conditions that apply to the Receiver with respect to PHI.

**Postal Service**. The Receiver shall be immediately vested with the power to issue demands in the name of the Defendant upon the U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of postal boxes as may have been used by the Defendant for the receipt of rents or profits generated from, or other mail related to, the Property.

**Cooperation**. All persons or entities served with a copy of this Order must cooperate fully with the Receiver in the performance of its duties. This cooperation includes but is not limited to, providing any non-privileged information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver.

**Plaintiff's Rights**. Nothing in this Order is intended to interfere with, or adversely affect, any exercise of Plaintiff's rights, nor is the Order intended to constitute a waiver of, or election not to proceed with, any judicial foreclosure sale.

**Oath and Bond**. The Receiver will file with the Clerk of this Court a receiver's oath and post a bond in the amount of $10,000.00 to ensure the full and faithful performance of its obligations herein. The cost of the Receiver's Bond and any renewals or extensions shall be an expense of the Receivership estate paid from the Property funds.

**Property Insurance**. Should the Receiver retain a Property Manager, that Property Manager shall carry the following insurance coverages: (A) excess/umbrella coverage in the minimum amount of $1 million per claim above primary policy limits or a greater amount as required by Plaintiff; (B) dishonesty, identity theft, fidelity, cyber (first party and third-party

A-14

including identity theft resolution and loss control services), general liability coverage (separate from the Insurance on Property as defined herein), business automobile liability, and employer's liability, with each such coverage having a minimum coverage amount of $1 million per occurrence and $1 million in the aggregate; and (C) worker's compensation with a minimum per claim coverage amount in accordance with state laws. All such coverages for the Property Manager are collectively referred to as "Property Management Insurance." The Receiver shall be added as an "additional named insured" to Property Management Insurance upon hiring or retention of the Property Manager. To the extent the Receiver engages agents or contractors to provide services that require those agents or contractors to have access or effect physical changes to the Property, those entities must also have appropriate coverages in the same amounts as the required Property Management Insurance. The Plaintiff shall be named as an additional insured on the Property Management Insurance. For the avoidance of doubt, the Receiver, the Property Manager and their employees, as well as any of their agents, attorneys or contractors shall always keep in force the minimum amounts of coverage as set forth in this paragraph for Property Management Insurance, including applicable tail coverage. Each insurance carrier providing Property Management Insurance, whether admitted or non-admitted, must comply with a minimum (A) A. M. Best Financial Strength Rating of A- and (B) A.M. Best Financial Size Category of VII or better. The maximum deductible or self-insured retention or any combination thereof for each coverage shall be no more than $25,000. The premiums for insurance policies and deductibles for all Property Management Insurance shall not be expenses of the Receivership estate. The Receiver and the Property Manager will, upon appointment, provide certificates to the Plaintiff evidencing insurance coverages, and thereafter, upon the Plaintiff's request. The Receiver and the Property Manager will promptly notify the Plaintiff of any material change in insurance coverages.

**Limitation of Liability**. No person or entity, including but not limited to creditors, claimants, bodies politic, and parties in interest, may file suit against the Receiver, or any of his employees, agents, representatives, or attorneys or anyone acting on behalf of any of them (together, the "Receiver Representatives"), or the Property, without first obtaining an order of this Court permitting the suit or action upon motion and evidentiary hearing. The Receiver and Receiver Representatives shall have no personal liability for any liabilities, obligations, liens, citations, code violations, or environmental liabilities relating to the Property, or for amounts owed to any of Defendant's creditors, taxing authorities, bodies politic, or other claimants because of his duties as Receiver, whether arising before or after the Effective Date. The Receiver and the Receiver Representatives shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, or failure to comply with this Court's Orders.

**Stay and Injunction**. Defendant, Defendant's Agents, all those in active participation or concert with them, and any person or entity having claims against the Property who receive notice of this Order, are enjoined and stayed from taking any action to establish or enforce any claim, right or interest related to the Property or against the Receiver, receivership assets, or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

I.    Commencing, prosecuting, litigating or enforcing any suit against the Defendant, the Receiver or otherwise related to the Property, except that actions may be filed to toll any applicable statute of limitations;

II.    Obtaining, enforcing, or perfecting any lien upon, imposing any charge or assessment, taking or attempting to take possession of, or retaining possession of, the Property, its improvements and appurtenant assets, or attempting to foreclose, forfeit, alter or terminate any of the Receiver's interests in property, whether such acts are part of a judicial proceeding or otherwise;

A-16

III. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process, including but not limited to for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receiver, or any agent of the Receiver;

IV. Terminating any existing service, as a means of attempting to collect an obligation of the Defendant or on account of an obligation of the Defendant, provided that this subparagraph shall have no application to claims or amounts payable to utility providers governed by the Public Utilities Commission of Ohio;

V. Demand, collect, receive, discount, or in any other way divert or use any of the Revenue; or expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Property or Revenue without prior Court order.

VI. Doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or its duties, or to interfere with the exclusive jurisdiction of this Court over the Property.

**Receiver's Inventory and Reports**. Unless this Court orders otherwise, the Receiver shall file, as soon as practicable but not later than 60 days after the Effective Date, an inventory as required under Local Rule 66.1 (the "Inventory Report"). No later than the earlier of (i) 90 days after the Effective Date or (ii) one month after filing the initial Inventory Report, the Receiver shall file with the Clerk a report of receipts and distributions, and a similar report shall be filed every month thereafter, as required by Local Rule 66.1, unless otherwise ordered by the Court. The Receiver shall also file a final report within 90 days from the time at which his appointment is terminated unless a different time period is approved by the Court. Any objection or exception to any of the Receiver's reports or inventory shall be filed within 21 days after the report or inventory is filed.

**Compensation**. The Receiver will be compensated as follows, subject to Court approval: Mr. Lane will charge $500 per hour and his colleague, Mr. Ferkovic will charge $360 per hour.

Attorneys Nancy Valentine and Amanda Martinsek of Miller, Canfield, Paddock and Stone, PLC, will charge $575 and $575 per hour, respectively. Any other lawyer or law firm employed by the Receiver shall be compensated at 10% less than their normal hourly rates, subject to Court approval. Approved fees of the Receiver and its counsel shall have priority over all other claims and creditors, including Plaintiff.

**Fee Applications**. Prior to payment of any fees to the Receiver or its counsel, the Receiver must file a written request for the payment of compensation of the Receiver or counsel. The requests for compensation will itemize the time and nature of services rendered by the Receiver and counsel in increments of no greater than one-tenth of an hour. The Receiver and his counsel shall not receive any compensation in excess of the amounts set forth in the Budget unless and until approved by this Court. If any compensation of the Receiver or his counsel contemplated by the Budget is subsequently denied by the Court as being unreasonable or excessive shall be returned to the receivership or, if applicable, credited toward future compensation due to that payee.

**Instructions from Court**. The terms of this Order are meant to balance the competing interest of multiple parties as they relate to the receivership proceedings. To the extent that the Receiver and any interested party are unable without Court intervention to resolve a dispute as to any term of this Order or action of the Receiver, or the Receiver requires further instruction, direction, or authority from the Court, the Receiver may seek instructions from the Court, *ex parte* or otherwise, as to how to proceed. The Receiver and his counsel are authorized to communicate *ex parte* with the Court and any magistrate referred to this matter, as well as their staff, on any matters related to the Property and this Order. The Receiver shall also be permitted to communicate unilaterally with any party to this matter and that party's counsel and/or representative.

A-18

**Termination of the Receivership**. Upon the filing of any notice by Plaintiff that the Property has transferred by judicial foreclosure or by means of a deed in lieu of foreclosure, the receivership shall terminate without further order of the Court, and Plaintiff or the Receiver may request discharge of the Receiver following the filing of a Final Report and the payment of all administrative expenses of the receivership estate that have priority over Plaintiff's claims. Plaintiff may move the Court to terminate the receivership at any time, provided that no motion to terminate without cause may be filed within 120 days after the Effective Date.

**Jurisdiction**. The Court will retain jurisdiction over the Property and its condition through the termination of the receivership and the termination of this matter. Any purchaser of the Property will remain subject to this Court's jurisdiction as to any warranties or representations made during the sale process.

**Service of Order**. The Receiver will serve a copy of this Order upon all interested parties in this case at the time the Receiver files its undertaking and posts its bond.

**IT IS SO ORDERED** this _____ day of _____, 2025.

_____
U.S. DISTRICT JUDGE [    ].

Respectfully submitted,

*/s/ Peter R. Morrison*
Peter R. Morrison (0085127)
peter.morrison@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
1100 Key Tower, 127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
*Attorney for All Pro Capital*

EXHIBIT A

LEGAL DESCRIPTION

Policy No.:
Agent Title No.: 200001910263
Loan No.:

**LEGAL DESCRIPTION**

**EXHIBIT "A"**


Tract I

Parcel 1:  (PPN:  120-05-007)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being Sublot Nos. 44 and 45 in Martin Dodge's
Subdivision, of part of Original 100 Acre Lot No. 388, as shown
by the recorded plat in Volume 18 of Maps, page 17, of the
Cuyahoga County Records, and together forming a parcel of land
60 feet front on the Southerly side of Superior Avenue, and
extending back between parallel lines 130 feet deep, as appears
by said plat.

Parcel 2:  (PPN:  120-05-008)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being Sublots 46 and 47 in the Martin Dodge's
Subdivision, of part of Original 100 Acre Lot No. 388, as shown
by the recorded plat in Volume 18 of Maps, page 17, of the
Cuyahoga County Records, and forming a parcel of land having a
frontage of 60 feet on the Southerly side of Superior Avenue (60
feet wide), extending back between parallel lines 130 feet, and
contains 0.1791 acres of land, as appears by said plat, be the
same more or less, but subject to all legal highways.

Parcel 3:  (PPN:  120-05-011)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being Sublot No. 93 in the Martin Dodge's
Subdivision, of part of Original 100 Acre Lot No. 388, as shown
by the recorded plat in Volume 18 of Maps, page 17, of the

27307 (6/06)

EXHIBIT "A" (continued)

Cuyahoga County Records, said Sublot No. 93 has a frontage of
30.90 feet on the Southwesterly side of Lakeview Road (55 feet
wide), extends back between parallel lines 100.85 feet on the
Northerly line, 107.71 feet on the Southerly line, and has a
rear line of 30 feet, and contains 0.0718 acres of land, as
appears by said plat, be the same more or less, but subject to
all legal highways.

Parcel 4: (PPN: 120-05-010)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being all of Sublot No. 94, and part of Sublot No.
96, in Martin Dodge's Superior Street Allotment, of part of
Original 100 Acre Lot No. 388, as shown by the recorded plat in
Volume 18 of Maps, page 17, of the Cuyahoga County Records, and
together forming a parcel of land bounded and described as
follows:

Beginning on the Westerly line of Lakeview Road, N.E. (formerly
Lakeview Avenue), at the Southeasterly corner of said Sublot No.
94;

Thence Northerly, along said Westerly line of Lakeview Road,
N.E., 59.62 feet;

Thence Westerly, 57.8 feet to a stake on the Westerly line of
said Sublot No. 96, distant 72.12 feet Southerly, from the
Southerly line of Superior Avenue, N.E. (formerly Superior
Street);

Thence Southerly, along the Westerly line of Sublot No. 96, a
distance of 27.88 feet to the Northerly line of said Sublot No.
94;

Thence Westerly, along said Northerly line of Sublot No. 94, a
distance of 30 feet to the Northwesterly corner thereof;

Thence Southerly, along the Westerly line of said Sublot No. 94,
a distance of 30 feet to the Southwesterly corner thereof;

Thence Easterly, along the Southerly line of said Sublot No. 94,
a distance of 100.85 feet to the place of beginning, be the same
more of less, but subject to all legal highways.

Parcel 5: (easterly part of PPN: 120-05-009)

EXHIBIT "A" (continued)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 96 in Martin Dodge's Superior Street Allotment, of part of Original 100 Acre Lot No. 388, as shown and bounded and described as follows;

Beginning on the Southerly line of Superior Avenue, N.E. (formerly Superior Street), at the Northwesterly corner of said Sublot No. 96;

Thence Easterly, along said Southerly line of Superior Avenue N.E., 41.10 feet to its point of intersection with Westerly line of Lakeview Road N.E. (formerly Lakeview Avenue);

Thence Southerly, along said Westerly line of Lakeview Road N.E., 74.27 feet to the Northeasterly corner of land conveyed to Joseph Verderber and Mary Verderber, his wife, by deed dated June 27, 1918 and recorded in Volume 2101, page 188, of the Cuyahoga County Records;

Thence Westerly, along the Northerly line of land so conveyed to Joseph Verderber and Mary Verderber, 57.08 feet to the Westerly line of said Sublot No. 96;

Thence Northerly, along said Westerly line of said Sublot No. 96, a distance of 72.12 feet to the place of the beginning, be the same more or less, but subject to all legal highways.

Parcel 6: (westerly part of PPN: 120-05-009)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being Sublot No. 95, in Martin Dodge's Superior Street Allotment, of part of Original 100 Acre Lot No. 388, as shown by the recorded plat of said allotment in Volume 18 of Maps, page 17, of the Cuyahoga County Records, said Sublot No. 95 has a frontage of 30 feet on the Southerly side of Superior Avenue N.E., and extends back between parallel lines 100 feet, as appears by said plat, be the same more or less, but subject to all legal highways.

Tract II

Parcel 1: (PPN: 134-08-032 and 134-08-064)

Situated in the City of Cleveland, County of Cuyahoga, and State

EXHIBIT "A" (continued)

of Ohio:

And known as being part of Sublot No. 72, in the Original Plat of Newburgh Village, as shown by the recorded plat in Volume 2 of Maps, page 20, of the Cuyahoga County Records, and also a part of Original 100 Acre Lot 464, and bounded and described as follows:

Beginning on the Northerly line of Miles Avenue, S.E. (70 feet wide), at its Intersection with the Easterly line of said Sublot No. 72;

Thence Northerly, along the said Easterly line, 213-3/12 feet to the Southeasterly corner of the second parcel of land described in the deed to Frances Beryl Long and Hinda M. Onstine by deed dated December 23, 1919 and recorded in Volume 2315, page 427, of the Cuyahoga County Records;

Thence Northerly, along the Easterly line of land so conveyed, 66 feet to the Northeasterly corner thereof;

Thence Westerly, along the Northerly line of land so conveyed, 66 feet to the Northwesterly corner thereof

Thence Southerly, along the Westerly line of land so conveyed, 66 feet to the Northwesterly corner of said Sublot No. 72;

Thence Southerly, along the Westerly line of said Sublot No. 72, a distance of 213-3/12  feet to said Northerly line of Miles Avenue S.E.;

Thence Easterly, along said Northerly line, 66 feet to the place of beginning, be the same more or less, but subject to all legal highways.

Parcel 2:  (PPN: 134-08-033)

Situated in the City of Cleveland, County of Cuyahoga,  and State of Ohio:

And known as being part of Sublots Nos. 69 and 73, in the Newburgh Village Allotment, of part of Original 100 Acre Lot No. 464, as shown by the recorded plot in Volume 2 of Maps, page 20, of the Cuyahoga County Records, and together forming a parcel of land bounded and described as follows:

Beginning on the Northerly line of Miles Avenue, S.E. (70 feet wide), at its point of intersection with the Westerly line of

EXHIBIT "A" (continued)

said Sublot No. 73;

Thence Northerly, along the Westerly line of said Sublots Nos. 73 and 69, about 279 feet 3 inches to the Northerly line of said Sublot No. 69;

Thence Easterly, along the Northerly line of said Sublot No. 69, a distance of 66 feet;

Thence Southerly, on a line parallel with the Westerly line of said Sublots Nos.69 and 73, about 279 feet 3 inches to the Northerly line of Miles Avenue, S.E.;

Thence Westerly, along the Northerly line of Miles Avenue S.E., 66 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

## Tract III

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being all of Sublot Number 93, in Ranney and Herrick's Subdivision, of part of Original Ten Acre Lots Numbers 128, 129, 130, and 131, as shown by the recorded plat in Volume 12, of Maps, page 30, of the Cuyahoga County Records, and bounded and described as follows:

Beginning at the intersection of the Westerly line of East 55th Street (100 feet wide), with the Northerly line of Spencer Street (50 feet wide);

Thence Westerly, along the Northerly line of Spencer Street, 150.00 feet;

Thence Northerly, at right angles to the last described line, and along the Westerly line of Sublot No. 93, a distance of 100.00 feet to the Northwesterly corner thereof;

Thence Easterly, at right angles to the last described line, along the Northerly line of said Sublot No. 93, a distance of 150.00 feet to the Westerly line of East 55th Street (100 feet wide);

Thence Southerly along the Westerly line of East 55th Street, 100.00 feet to the place of beginning, according to a survey for Darby Realty, Inc., by Seymour D. Weiss and Associates dated January 19, 1972, be the same more or less, but subject to all

EXHIBIT "A" (continued)

legal highways.

PPN: 104-11-022

Tract IV

Parcel 1:   (PPN: 119-01-091)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being Sublot No. 2, in J. H. Thorp and L. S.
Holden's Subdivision, of part of Original 100 Acre Lot No. 391,
as shown by the recorded plat in Volume 7 of Maps, page 33, of
the Cuyahoga County Records, and being 57 feet front on the
Westerly side of Genesee Avenue (now East 82nd Street), and
extending back, of equal width 120 feet deep along Southerly
line of Hough Avenue, as appears by said plat, be the same more
or less, but subject to all legal highways.

Parcel 2:   (PPN: 119-01-090)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being Sublot No. 3, in J. H. Thorp and L. S.
Holden's Subdivision, of part of Original 100 Acre Lot No. 391,
as shown by the recorded plat in Volume 7 of Maps, page 33, of
the Cuyahoga County Records, be the same more or less, but
subject to all legal highways.

Parcel 3:   (PPN: 119-01-089)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being all of Sublot No. 4, and the Easterly 25 feet
of the Southerly 45 feet of Sublot No. 1, in Thorpe and Holden's
Subdivision, of part of Original One Hundred Acre Lot No. 391,
as shown by the recorded plat of said Subdivision in Volume 7 of
Maps, page 33, of the Cuyahoga County Records, and bounded and
described as follows:

Beginning in the Westerly line of East 82nd Street (formerly
Genesee Avenue), at the Southeast corner of said Sublot No. 4;

Thence Westerly, along the Southerly line of said Sublot Nos. 4
and 1, a distance of 145 feet;

EXHIBIT "A" (continued)

Thence Northerly, parallel with the Westerly line of East 82nd Street, 45 feet;

Thence Easterly, parallel with the Southerly line of said Sublot No. 1, a distance of 25 feet to the Northwest corner of said Sublot No. 4;

Thence Easterly, along the Northerly line of said Sublot No. 4, a distance of 120 feet to the Westerly line of East 82nd Street;

Thence Southerly, along the Westerly line of East 82nd Street, 45 feet to the place of beginning, being a parcel of land having a frontage of 45 feet on the Westerly side of East 82nd Street, and extending back between parallel lines, 145 feet, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 4:   (PPN: 119-01-088)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 12, of the Hough Estate, in Original Lot No. 391 and 392, formerly in the City of East Cleveland, being 50 feet front on East 82nd Street, by 160 feet deep off the East part of said Lot No. 12, and bounded as follows:

Commencing in the West line of East 82nd Street, 100 feet North of the South line of said Sublot No.12;

Thence West, 160 feet;

Thence North, 50 feet, parallel with the West line of said street;

Thence East, 160 feet to a stake in the West line of said street;

Thence South, 50 feet to the place of beginning, and more accurately described as follows:

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 12, in Hough Heirs Subdivision, of part of original One Hundred Acre Lot Nos. 391

EXHIBIT "A" (continued)

and 392, as shown by the recorded plat in Volume 3 of Maps, Page
21, of the Cuyahoga County Records, and part of Sublot No. 6 in
W.E. and C.F. Pedrick's Subdivision, of part of Original One
Hundred Acre Lot No. 391, as shown by the recorded plat in
Volume 5 of Maps, page 19, of the Cuyahoga County Records,
bounded and described as follows:

Beginning in the Westerly line of East 82nd Street (66 feet
wide), at a point distant Northerly measured along said Westerly
line, 100 feet from the Southeasterly corner of said Sublot Nos.
12 and 6, in the aforesaid subdivision;

Thence Westerly, on a line parallel with the Southerly line of
said Sublot Nos. 12 and 6, a distance of 160 feet;

Thence Northerly, and parallel with the Westerly line of East
82nd Street, 50 feet;

Thence Easterly, on a line parallel with the first described
line, 160 feet to the Westerly line of said East 82nd Street;

Thence Southerly, along said Westerly line of East 82nd Street,
50 feet to the place of beginning, as appears by said plat, be
the same more or less, but subject to all legal highways.

Parcel 5:  (PPN: 119-01-093 and 119-01-049)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being part of Sub Lot No. 11, in Lucretia M. Holt's
Subdivision, of part of Original 100 Acre Lot Nos. 391 and 392,
as shown by the recorded plat in Volume 5 of Maps, page 29, of
the Cuyahoga County Records, and part of Sub Lot No. 1 in J. H.
Thorp and L. S. Holden's Subdivision, of part of Original 100
Acre Lot No. 391, as shown by the recorded plat in Volume 7 of
Maps, page 33, of the Cuyahoga County Records, and together
forming a parcel of land bounded and described as follows:

Beginning on the Southerly line of Hough Avenue, N.E., at the
Northeasterly corner of said Sub Lot No.1;

Thence Westerly, along the Southerly line of Hough Avenue, N.E.,
65 feet to a point distant 25 feet Westerly, measured along said
Southerly line, from the Northeasterly corner of said Sub Lot
No. 11;

Thence Southerly, and parallel with the Easterly line of Sub Lot

EXHIBIT "A" (continued)

No. 11, a distance of 147 feet to the Southerly line of Sub Lot
No. 11;

Thence Easterly, along the Southerly line of Sub Lots No. 11 and
1, a distance of 40 feet;

Thence Northerly, and parallel with the Easterly line of Sub Lot
No. 1, a distance of 45 feet;

Thence Easterly, and parallel with the Southerly line of Sub Lot
No. 1, a distance of 25 feet to the Easterly line of Sub Lot No.
1;

Thence Northerly, along the Easterly line of Sub Lot No. 1, a
distance of 102 feet, to the place of beginning, as appears by
said plats, be the same more or less, but subject to all legal
highways.

Parcel 6:  (PPN: 119-03-001)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being part of Sub Lot No. 11, in Eliza Hough and
Heirs of Oliver Hough's Allotment, of part of Original One
Hundred Acre Lot Nos. 391 and 392, as shown by the recorded plat
in Volume 3 of Maps, page 21, of the Cuyahoga County Records,
and bounded and described as follows:

Beginning on the Southerly line of Hough Avenue, N.E. (formerly
Hough Avenue), at its point of intersection with the Easterly
line of East 82nd Street (formerly Woodland Street);

Thence Easterly, along said Southerly line of Hough Avenue,
N.E., 71 feet;

Thence Southerly, on a line parallel with said Easterly line of
East 82nd Street, 50 feet;

Thence Westerly, on a line parallel with said Southerly line of
Hough Avenue, N.E., 71 feet to said Easterly line of East 82nd
Street;

Thence Northerly, along said Easterly line of East 82nd Street,
50 feet to the place of beginning, as appears by said plat, be
the same more or less, but subject to all legal highways.

Parcel 7:  (PPN: 119-03-002)

EXHIBIT "A" (continued)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sub Lot No. 11 in Eliza Hough and Heirs of Oliver Hough's Allotment, of part of Original One Hundred Acre Lot Nos. 391 and 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

Beginning on the Easterly line of East 82nd Street (formerly Genesee Street), at a point 50 feet Southerly, measured along said Easterly line from its point of intersection with the Southerly line of Hough Avenue N.E.;

Thence Southerly, along the Easterly line of East 82nd Street, 50 feet;

Thence Easterly, on a line parallel with the Southerly line of Hough Avenue, N.E., 71 feet;

Thence Northerly, on a line parallel with the Easterly line of East 82nd Street, 50 feet;

Thence Westerly, on a line parallel with the Southerly line of Hough Avenue, N.E., 71 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 8:  (PPN: 119-03-003)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in a Subdivision made by in Eliza Hough and Heirs of Oliver Hough, of part of Original 100 Acre Lot Nos. 391 & 392, as shown by the recorded plat in Volume of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

Beginning on the Easterly line of East 82nd Street (formerly Genesee Street), at a point 100 feet Southerly from its point of intersection with the Southerly line of Hough Avenue, N.E., formerly Hough Avenue;

Thence Southerly, along said Easterly line of East 82nd Street, 50 feet;

EXHIBIT "A" (continued)

Thence Easterly, parallel with the Southerly line of Hough Avenue, N.E., 71 feet;

Thence Northerly, parallel with said Easterly line of East 82nd Street, 50 feet;

Thence Westerly, 71 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 9:   (PPN: 119-03-004)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in the Hough Heirs' Subdivision, of part of Original 100 Acre Lots Nos. 391 & 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

Beginning at the intersection of the Easterly line of East 82nd Street, formerly Genesee Avenue, with the Northerly line of Brookline Court, N.E., formerly Crawford Court;

Thence Easterly, along the Northerly line of Brookline Court, N.E., 150 feet;

Thence Northerly, and parallel with the Easterly line of East 82nd Street, 67 feet;

Thence Westerly, and parallel with the Northerly line of Brookline Court, N.E., 150 feet to the Easterly line of East 82nd Street;

Thence Southerly, along the Easterly line of East 82nd Street, 67 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 10:   (PPN: 119-03-042)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being the Easterly 18.75 feet of Sublot No. 1, and the Westerly 37.50 feet of Sublot No. 2, in C.D. Bishop's Re-Subdivision, of part of Original 100 Acre Lot No. 391, as shown by the recorded plat of said Re-Subdivision in Volume 14 of

EXHIBIT "A" (continued)

Maps, page 11, of the Cuyahoga County Records. Said parts of Sublots Nos. 1 and 2 together forming a parcel of land having a frontage of 56-25/100 feet on the Southerly side of Hough Avenue, N.E., and extending back between parallel lines, 140 feet 4-7/10 inches on the Westerly line, and 140 feet 4-4/10 inches on the Easterly line, and being 56.25 feet wide in the rear, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 11: (PPN: 119-03-043)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 1, in C.D. Bishop's Allotment, of part of original 100 Acre Lot No. 391, as shown by the recorded Plat in Volume 14 of Maps, page 11, of the Cuyahoga County Records, and bounded and described as follows:

Beginning on the Southerly line of Hough Avenue, N.E., formerly Hough Avenue, 66 feet wide, at the Northwesterly corner of said Sublot No. 1;

Thence Easterly, along said Southerly line of Hough Avenue, N.E., 56.25 feet;

Thence Southerly, on a line parallel with the Easterly line of said Sublot No. 11, about 140 feet 4.7 inches to the Southerly line of said Sublot No. 1;

Thence Westerly, along said Southerly line of Sublot No. 1, a distance of 56.25 feet to the Southwesterly corner thereof;

Thence Northerly, along the Westerly line of said Sublot No. 1, a distance of 140 feet 5 inches, to the place of beginning, be the same more or less, but subject to all legal highways.

Parcel 12: (PPN: 119-03-044)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in Eliza Hough and Heirs of Oliver Hough's Allotment, of part of Original One Hundred Acre Lot Nos. 391 and 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

EXHIBIT "A" (continued)

Beginning on the Southerly line of Hough Avenue, N.E. (formerly Hough Avenue), 66 feet wide, at a point distant 222 feet Easterly, measured along the Southerly line of Hough Avenue, N.E., from its intersection with the Easterly line of East 82nd Street (formerly Genesee Street), 66 feet wide, said place of beginning being also the Northwesterly corner of land conveyed to Edward S. Dean by deed dated December 1, 1894 and recorded in Volume 589, page 411, of the Cuyahoga County Records;

Thence Easterly, along the Southerly line of Hough Avenue, N.E., 141 feet to the Easterly line of said Sublot No. 11;

Thence Southerly, along the Easterly line of said Sublot No.11, a distance of 140 feet 6 inches;

Thence Westerly, and parallel with the Southerly line of Hough Avenue, N.E., 33 feet 4 inches;

Thence Southerly, and parallel with the Easterly line of said Sublot No. 11, a distance of 9 feet 6 inches;

Thence Westerly, and parallel with the Southerly line of Hough Avenue, N.E., 107  feet 8 inches to the Southwesterly corner of land conveyed to Edward S. Dean, as aforesaid;

Thence Northerly, along the Westerly line of land so conveyed to Edward S. Dean, 150 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 13:  (PPN: 119-03-045)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in Eliza Hough and Heirs of Oliver Hough's Allotment, of part of Original One Hundred Acre Lot Nos. 391 and 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

Beginning on the Southerly line of Hough Avenue, N.E., at a point distant 181 feet Easterly measured along said Southerly line from the Easterly line of East 82nd Street;

Thence Easterly, along the Southerly line of Hough Avenue, N.E., 41 feet to a point;

EXHIBIT "A" (continued)

Thence Southerly, at right angles to the Southerly line of Hough Avenue, N.E., 140 feet to a point;

Thence Westerly, parallel with the Southerly line of Hough Avenue, N.E., 41 feet to a point;

Thence Northerly, in a direct line, 140 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 14:  (PPN: 119-03-046)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in the Subdivision by Eliza Hough and Heirs of Oliver Hough, of part of Original One Hundred Acre Lot Nos. 391 and 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

Beginning on the Southerly line of Hough Avenue, N.E., at a point 142 feet Easterly, measured along said Southerly line from its intersection with the Easterly line of East 82nd Street;

Thence Easterly, along the Southerly line of Hough Avenue, N.E., 39 feet;

Thence Southerly, along a line at right angles with the Southerly line of Hough Avenue, N.E., 140 feet;

Thence Westerly, and parallel with the Southerly line of Hough Avenue, N.E., 39 feet;

Thence Northerly, 140 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 15:  (PPN: 119-03-047)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in Eliza Hough and the Hough Heirs Allotment, of part of Original One Hundred Acre Lot Nos. 391 and 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

EXHIBIT "A" (continued)

Beginning at a point in the Southerly line of Hough Avenue, N.E.
(formerly Hough Avenue), 71 feet Easterly of the intersection of
the Easterly line of East 82nd Street (formerly Genesee Avenue),
and the Southerly line of Hough Avenue, N.E.;

Thence Easterly, along the Southerly line of Hough Avenue, N.E.,
71 feet;

Thence Southerly, and parallel with the Easterly line of East
82nd Street, 150 feet;

Thence Westerly, and parallel with the Southerly line of Hough
Avenue, N.E., 71 feet;

Thence Northerly, 150 feet to the place of beginning, as appears
by said plat, be the same more or less, but subject to all legal
highways.

Parcel 16:  (PPN: 119-03-048)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being part of Sub Lot No. 11 in Oliver Hough's
Heirs Subdivision, of part of Original One Hundred Acre Lots
Nos. 391 and 392, as shown by the recorded plat in Volume of 3
Maps, page 21, of the Cuyahoga County Records, and bounded and
described as follows:

Beginning at the intersection of the Southerly line of Hough
Avenue, N.E., with the Easterly line of East 82nd Street
(formerly Genesee Avenue);

Thence Easterly, along said Southerly line of Hough Avenue,
N.E., 142 feet to the Northwesterly corner of land conveyed to
Samuel Goldberg, by deed dated November 6, 1905 and recorded in
Volume 999, page 517, of the Cuyahoga County Records;

Thence Southerly, along the Westerly line of land so conveyed to
Samuel Goldberg, 140 feet to the Southwesterly corner thereof,
and the principal place of beginning of premises herein
described:

Thence Easterly, along the Southerly line of land so conveyed to
Samuel Goldberg, and along the Southerly line of land conveyed
to Lena M. Richards, by deed dated June 28, 1915 and recorded in
Volume 1693, page 346, of the Cuyahoga County Records, 80 feet

EXHIBIT "A" (continued)

to the Southeasterly corner of land so conveyed to Lena M. Richards;

Thence Southerly, along the Southerly prolongation of the Easterly line of land so conveyed to Lena M. Richards, 10 feet;

Thence Westerly, and parallel with said Southerly line of Hough Avenue, N.E., 80 feet to the Southerly prolongation of the Westerly line of land conveyed to Samuel Goldberg, as aforesaid;

Thence Northerly, along said Southerly prolongation, 10 feet to the principal place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 17:   (PPN: 119-03-049)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in Oliver Hough's Heirs Subdivision, of part of Original One Hundred Acre Lot Nos. 391 and 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

Beginning in the Northerly line of Brookline Avenue, N.E. (formerly Crawford Road, N.E.), at the Southwesterly corner of a parcel of land conveyed by Ellen C. Lewis and Joseph M. Lewis, wife and husband, to Samuel H. Stecker, by deed dated October 31, 1919 and recorded in Volume 2314, page 457, of the Cuyahoga County Records;

Thence Westerly, along said Northerly line of Brookline Avenue, N.E., 17.70 feet to an angle in said Northerly line;

Thence continuing Westerly, along said Northerly line of Brookline Avenue, N.E., 48.88 feet to an angle in said Northerly line;

Thence continuing Westerly, along said Northerly line of Brookline Avenue, N.E., 0.45 of a foot to the Southeasterly corner of a parcel of land conveyed by George W. Smith and Sadie J. Smith, his wife, to Henry A. Wise by deed dated December 8, 1902 and recorded in Volume 862, page 396, of the Cuyahoga County Records;

Thence Northerly, along the Easterly line of land so conveyed to Henry A. Wise, 67.53 feet to the Northeasterly corner thereof;

EXHIBIT "A" (continued)

Thence Easterly, in a direct line, 65.85 feet to the Northwesterly corner of land conveyed to Samuel H. Stecker, as aforesaid;

Thence Southerly, along the Westerly line of land so conveyed to Samuel H. Stecker, 57.45 feet to the place of beginning, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 18:  (PPN: 119-03-050)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in Eliza Hough and Heirs of Oliver Hough's Allotment, of part of Original One Hundred Acre Lots Nos. 391 and 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

Beginning in the Northerly line of Brookline Avenue, N.E. (formerly Crawford Place), the Southeast corner of a 5 foot parcel of land conveyed by George Smith and wife, to Ellen G. Lewis by deed dated July 10, 1902, and recorded in Volume 831, page 610, of the Cuyahoga County Records, said Brookline Avenue, N.E., being as shown on, and dedicated by the plat thereof, in Volume 28 of Maps, page 13, of the Cuyahoga County Records;

Thence Westerly, along the Northerly line of Brookline Avenue, N.E., a distance of 47 feet;

Thence Northerly, in a line drawn parallel with the Westerly line of land conveyed to Lewis, as aforesaid, a distance of 57 feet;

Thence Easterly, in a line drawn parallel with the Northerly line of Brookline Avenue, N.E., a distance of 47 feet to the Northeasterly corner of land conveyed to Lewis, as aforesaid;

Thence Southerly, along the Easterly line of land conveyed to Lewis, a distance of 57 feet to the place of beginning, according to the survey of Charles W. Root, Civil Engineer, be the same more or less, but subject to all legal highways.

Parcel 19:  (PPN: 119-03-051)

Situated in the City of Cleveland, County of Cuyahoga, and State

EXHIBIT "A" (continued)

of Ohio:

And known as being part of Sublot No. 11, in Oliver Hough's
Heirs' Subdivision, of part of Original One Hundred Acre Lot
Nos. 391 and 392, according to the plat of said Subdivision in
Volume 3 of Maps, page 21, of the Cuyahoga County Records, and
bounded and described as follows:

Beginning in the Northerly line of Brookline Avenue, N.E.
(formerly Crawford Place), 30 feet wide, at a point 458.66 feet
distant Westerly from the intersection of said Northerly line
with the Westerly line of Crawford Road, N.E., said Northerly
line of Brookline Avenue, N.E., being drawn parallel with, and
90 feet distant Northerly from the Southerly line of said Sublot
No. 11;

Thence Northerly, in a line drawn at right angles to the
Northerly line of Brookline Avenue N.E., a distance of 56.90
feet;

Thence Westerly, in a line drawn parallel with the Northerly
line of Brookline Avenue, N.E., a distance of 33.00 feet;

Thence Southerly, to a point in the Northerly line of Brookline
Avenue, N.E., 33.83 feet distant Westerly from the place of
beginning;

Thence Easterly, along the Northerly line of Brookline Avenue
N.E., a distance of 33.83 feet to the place of beginning, and
being further known as Sublot No. 10, in F. B. Fox's proposed
Resubdivision, be the same more or less, but subject to all
legal highways.

Parcel 20: (PPN: 119-03-052)

Situated in the City of Cleveland, County of Cuyahoga, and State
of Ohio:

And known as being part of Sublot No. 11, in Oliver Hough Heirs'
Subdivision, of part of Original One Hundred Acre Lots Nos. 391
and 392, as shown by the recorded plat in Volume 3 of Maps, page
21, of the Cuyahoga County Records, and bounded and described as
follows:

Beginning on the Northerly line of Brookline Avenue, N.E.
(formerly Crawford Place), 30 feet wide, at a point 425.66 feet
Westerly from the intersection of the Northerly line of
Brookline Avenue, N.E., with the Westerly line of Crawford Road,

EXHIBIT "A" (continued)

N.E., said Northerly line of Brookline Avenue, N.E., being drawn parallel with, and 90 feet distant Northerly, from the Southerly line of said Sublot No. 11;

Thence Northerly, at right angles to said Northerly line of Brookline Avenue, N.E., 56.90 feet;

Thence Westerly, and parallel with the Northerly line of Brookline Avenue, N.E., 33 feet;

Thence Southerly, at right angles to the last described course, to the Northerly line of Brookline Avenue, N.E.;

Thence Easterly, along the Northerly line of Brookline Avenue, N.E., 33 feet to the place of beginning, and being further known as Sublot No. 11 in F.B. Fox's proposed Resubdivision, as appears by said plat, be the same more or less, but subject to all legal highways.

Parcel 21:  (part of PPN: 119-03-053)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in Hough Heirs' Allotment, of part of Original One Hundred Acre Lots Nos. 391 and 392, as shown by the recorded plat in Volume 31 of Maps, page 21, of the Cuyahoga County Records, and bounded and described as follows:

Beginning in the Northerly line of Brookline Court, N.E. (formerly Crawford Place), at a point distant Westerly 391.66 feet from its point of Intersection with the Northwesterly line of Crawford Road, N.E.;

Thence Westerly, along the Northerly line of Brookline Court, N.E., 34 feet;

Thence Northerly, at right angles to the Northerly line of Brookline Court, N.E., 56.90 feet;

Thence Easterly, parallel with the Northerly line of Brookline Court, N.E., 34 feet;

Thence Southerly, 56.90 feet to the place of beginning, and being further known as Sublot No. 12 in F. B. Fox's proposed Allotment, of part of Original One Hundred Acre Lots Nos. 391 and 392, be the same more or less, but subject to all legal

EXHIBIT "A" (continued)

highways.

Parcel 22:  (part of PPN: 119-03-053)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Sublot No. 11, in Hough Heirs' Allotment, of part of Original One Hundred Acre Lots Nos. 391 and 392, as shown by the recorded plat in Volume 3 of Maps, page 21, of  the Cuyahoga County Records, and bounded and described as follows:

Beginning at the intersection of the Easterly line of said Sublot No. 11, with the Southerly line of Hough Avenue, N.E.;

Thence Southerly, along the Easterly line of said Sublot, 150 feet;

Thence Westerly, parallel with Hough Avenue, N.E., 33-4/12 feet;

Thence Northerly, parallel with the Easterly line, 150 feet to the Southerly line of Hough Avenue, N.E., 33-4/12 feet to the place of beginning, and conveying only the Southerly 9-1/2  feet of the above described premises and conveying only a strip of land 9-1/2  feet in depth, and 33-1/3  feet in width off the Southerly end of the above described premises, as appears by said plat, be the same more or less, but subject all legal highways.

Tract V

Parcel 1:  (PPN: 138-11-029)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being Sub Lots Nos. 41 and 42, in The Corlett Homestead Subdivision, of part of Original 100 Acre Lot No. 470, as shown by the recorded Plat in Volume 43 of Maps, page 27, of the Cuyahoga County Records, and together forming a parcel of land 101 feet front on the Northerly side of Miles Avenue, S.E., and extending back 162.96 feet deep on the Easterly line, 163.21 feet deep on the Westerly line, which is also the Easterly line of East 133rd Street, now vacated, and 101 feet in the rear, as appears by said plat be the same more or less, but subject to all legal highways.

EXHIBIT "A" (continued)

Parcel 2: (PPN: 138-11-030 and 138-11-031)

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being Sub Lot No. 43 in The Corlett Homestead Subdivision, of part of Original 100 Acre Lot No. 470, as shown by the recorded Plat in Volume 43 of Maps, page 22, of the Cuyahoga County Records, and being 45 feet front on Northerly sides of Miles Avenue, S.E., and extending back 162.85 feet deep on the Easterly line, 162.96 feet deep on the Westerly line, and being 45 feet in the rear, as appears said plat be the same more or less, but subject to all legal highways.

Together with that portion of vacated East 133rd Street, vacated by City of Cleveland Ordinance No. 1726-55, dated July 1, 1955.

EXCEPTING FROM Parcels 1 and 2 above the following described premises:

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being the rear 8.00 feet of Sublots Nos. 41, 42, and 43, in the Corlett Homestead Subdivision, of part of Original Newburgh Township Lot No. 470, recorded in Volume 43 of Maps, page 22, of the Cuyahoga County Records, and bounded and described as follows:

Beginning on the Easterly line of East 133rd Street at its intersection with the Northerly line of said Sublot No. 41;

Thence Southerly, 8.00 feet along the Westerly line of said Sublot No. 41, being also the Easterly line of East 133rd Street;

Thence Easterly, and parallel with said Northerly line of said Sublot No. 41, and said Sublots Nos. 42 and 43, about 140.00 feet to a point 6.00 feet Westerly of the Easterly line of said Sublot No. 43;

Thence Northerly, 8.00 feet parallel to the Easterly line of said Sublot No. 43, to its intersection with said Northerly line of said Sublot;

Thence Westerly, about 140.00 feet to the place of beginning.

Parcel 3: (PPN: 138-11-031)

EXHIBIT "A" (continued)


Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being Sublot No. 44 in The Corlett Homestead Subdivision of part of Original 100 Acre Lot No. 470, as shown by the recorded Plat in Volume 43 of Maps, page 22, of Cuyahoga County Records and being 45 feet front on the Northerly side of Miles Avenue, S.W., 162.74 feet deept on the Easterly line, 162.85 deep on the Westerly line and 45 feet wide in the rear, as appears by said plat, be the same more or less, but subject to all legal highways.

EXCEPTING FROM Parcel 3 above the following described premises:

The rear 55 feet of Sublot No. 44 and bounded and described as follows:

Beginning at the point where the easterly and northerly line of Sublot No. 44; Thence Southerly 55 feet;

Thence Easterly 45 feet to teh easterly line of Sublot No. 44;

Thence Northerly 55 feet to the place of beginning.

Tract VI

Parcel 1:  PPN: 115-30-007

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being Sublot No. 15, in the St. Clair Land Company's Subdivision, of part of Original Euclid Township Lots Nos. 42 and 43, Tract No. 10, as shown by the recorded plat in Volume 31 of Maps, page 23, of the Cuyahoga County Records, and being 52.51 feet front on the Southeasterly side of St. Clair Avenue, N.E., and extending back 136.52 feet deep on the Northeasterly line, 135.49 feet deep on the Southwesterly line, and being 52.50 feet in the rear, as appears by said plat.

Parcel 2:  PPN: 115-30-008

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being Sublot No. 14, and part of Sublot Nos. 13 and 15 in William Rolf and A.J. Thieman's Subdivision, of part of

EXHIBIT "A" (continued)

Original Euclid Township Lot No. 42, as shown by the recorded plat in Volume 31 of Maps, page 13, of the Cuyahoga County Records, and together forming a parcel of land bounded and described as follows:

Beginning on the Southeasterly line of St. Clair Avenue, N.E., at a point distant Northeasterly 86 feet from its intersection with the Northeasterly line of Nye Road, N.E.;

Thence Northeasterly, 66.13 feet along the said Southeasterly line of St. Clair Avenue, N.E., to the most Northerly corner of said Sublot No. 14;

Thence Southeasterly, 208.91 feet along the Northeasterly line of said Sublot No. 14, to the most Easterly corner thereof;

Thence Southwesterly, 43.23 feet along the Southeasterly line of said Sublot No. 14, to the most Southerly corner thereof;

Thence Northwesterly, 72.70 feet along the Southwesterly line of said Sublot No. 14, to a point;

Thence Southwesterly, 10.20 feet at right angles to the Southwesterly line of said Sublot No. 14, to a point;

Thence Northwesterly, 79.96 feet parallel with the Southwesterly line of said Sublot No. 14, to a point;

Thence Northeasterly, 6 feet at right angles to the Southwesterly line of said Sublot No. 14, to a point;

Thence Northwesterly, 60 feet parallel with the Southwesterly line of said Sublot No. 14, to the place of beginning, as appears by said plat;

Parcel 3: PPN: 115-30-009

Situated in the City of Cleveland, County of Cuyahoga, and State of Ohio:

And known as being Sublot No. 12, and part of Sublot No. 13, in William Rolf and A.J. Thieman's Subdivision, of part of Original Euclid Township Lot No. 42, as shown by the recorded plat in Volume 31 of Maps, page 13, of the Cuyahoga County Records, and bounded and described as follows:

Beginning at the intersection of the Southeasterly line of St. Clair Avenue, N.E., with the Northeasterly line of Nye Road,

EXHIBIT "A" (continued)

N.E.;

Thence Northeasterly, 86 feet along the said Southeasterly line of St. Clair Avenue, N.E., to a point;

Thence Southeasterly, 60 feet parallel with the said Northeasterly line of Nye Road, N.E., to a point;

Thence Southeasterly, 6 feet parallel with the Southeasterly line of said Sublot No. 13, to a point;

Thence Southeasterly, 72.66 feet parallel with the said Northeasterly line of Nye Road, N.E., to a point in the Southeasterly line of said Sublot No. 13;

Thence Southwesterly, 79.80 feet, along the Southeasterly line of said Sublots Nos. 13 and 12, to the Northeasterly line of Nye Road, N.E.;

Thence Northwesterly, 138.61 feet along the said Northeasterly line of Nye Road, N.E., to the place of beginning.

<u>Tract VII</u>

Situated in the City of East Cleveland, County of Cuyahoga, and State of Ohio:

And known as being part of Original Euclid Township Lots Nos. 4 and 45, and being further bounded and described as follows:

Beginning at the intersection of the Northwesterly line of Euclid Avenue (86 feet wide), and the Northeasterly line of Strathmore Avenue (50 feet wide);

Thence North 38 deg. 41' 36" East, along the Northwesterly line of Euclid Avenue, a distance of 174.10 feet to a point therein, and the principal place of beginning;

Thence continuing North 38 deg. 41' 36" East, along said Northwesterly line of Euclid Avenue, a distance of 174.10 feet to a point therein;

Thence North 51 deg. 12' 14" West, a distance of 238.77 feet to a point;

Thence South 39 deg. 04' 56" West, a distance of 9.98 feet to a point;

EXHIBIT "A" (continued)

Thence North 51 deg. 16' 29" West, a distance of 167.83 feet to
a point;

Thence South 39 deg. 04' 56" West, a distance of 118.07 feet to
a point;

Thence North 50 deg. 50' 14" West, a distance of 95.00 feet to a
point in the Southeasterly line of Elderwood Avenue (45 feet
wide);

Thence South 54 deg. 14' 26" West, along said Southeasterly line
of Elderwood Avenue, a distance of 12.43 feet to a point
therein;

Thence South 50 deg. 50' 14" East, a distance of 98.25 feet to a
point;

Thence South 39 deg. 04' 56" West, a distance of 52.07 feet to a
point;

Thence South 50 deg. 22' 54" East, a distance of 168.14 feet to
a point;

Thence South 39 deg. 37' 06" East, a distance of 150.00 feet to
a point in the aforesaid Northeasterly line of Strathmore Avenue
(50 feet wide);

Thence South 50 deg. 22' 54" East, along said Northeasterly line
of Strathmore Avenue, a distance of 13.34 feet to a point
therein;

Thence North 38 deg. 23' 36" East, a distance of 175.57 feet to
a point;

Thence South 48 deg. 32' 54" East, a distance of 44.07 feet to a
point;

Thence South 50 deg. 22' 09" East, is distance of 185.79 feet to
a point in the Northwesterly line of Euclid Avenue, and the
principal place of beginning, according to a survey by Adeche-
Ciuni-Lynn Associates, Inc. in December 1980, be the same more
or less, but subject to all legal highways.

PPN: 673-05-038

<u>Tract VIII</u>

Situated in the City of Cleveland, County of Cuyahoga, and State

EXHIBIT "A" (continued)

of Ohio:

And known as being part of original Ten Acre Lot 99, and bounded and described as follows:

Beginning at a point in the centerline of East 47th Street, 50 feet wide, at its intersection with the Southerly line of Payne Avenue, 80 feet wide, from which point a stone monument found bears North 8 deg. 00' 00" West, along the centerline of East 47th street, 0.27 feet;

Thence North 69 deg. 58' 40" East, 25.56 feet to a survey spike set in the Easterly line of East 47th Street, at its intersection with the Southerly line of Payne Avenue, and the principal place of beginning of the parcel herein described;

Thence North 69 deg. 58' 40" East, along the Southerly line of Payne Avenue, 230.23 feet to its intersection with the Westerly line of a parcel of land conveyed to 4800 Payne Co. by deed recorded in Volume 84-2714, page 47, of the Cuyahoga County Records, and from which point an iron pin set bears North 20 deg. 01' 20" West, 0.30 feet;

Thence South 20 deg. 01' 20" East, along the Westerly line of said land conveyed to 4800 Payne Co., 140.00 feet to a survey spike set at an angle point, therein;

Thence South 69 deg. 58' 40" West, along the Westerly line of said land conveyed to 4800 Payne Co., 7.16 feet to a survey spike set at an angle point, therein;

Thence South 0 deg. 08' 38" East, along the Westerly line of said land conveyed to 4800 Payne Co., and its Southerly prolongation, 31.91 feet to a survey spike set at its intersection with the Northerly line of a parcel of land conveyed to Bostik, Inc., by deed recorded in Volume 89-7104, page 12, of the Cuyahoga County Records;

Thence South 69 deg. 58' 40" West, along the Northerly line of said land conveyed to Bostik, Inc., 118.07 feet to an iron pin set at its intersection with the Westerly line of said land so conveyed;

Thence South 8 deg. 00' 00" East, along the Westerly line of said land conveyed to Bostik, Inc., 4.14 feet to an iron pin set at its intersection with the Southerly line of a parcel of land conveyed to 4800 Payne Co., by deed recorded in Volume 15651, page 389, of the Cuyahoga County Records;

EXHIBIT "A" (continued)


Thence South 82 deg. 00' 00" West, along the Southerly line of
said land conveyed to 4800 Payne Co., 127.50 feet to an iron pin
set at its intersection with the Easterly line of East 47th
Street;

Thence North 8 deg. 00' 00" West, along the Easterly line of
East 47th Street, 150.80 feet to the principal place of
beginning, according to the survey by Donald G. Bohning and
Associates, Inc., dated August, 1998.

PPN: 104-28-005, 104-28-006, 104-28-007, 104-28-008, 104-28-009,
104-28-010, and 104-28-047