**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALL PRO CAPITAL FUNDING, LLC.,** | ) | **CASE NO.1:25CV1076** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | **OPINION AND ORDER** |
| **NORTHEAST OHIO** | ) | |
| **NEIGHBORHOOD HEALTH** | ) | |
| **SERVICES, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A.  BOYKO, J:**

This matter is before the Court on Plaintiff All Pro Capital Funding, LLC.,'s Motion to Dismiss Counterclaim Against All Pro Capital Funding LLC. (ECF # 23).  Because the parties agreed that federal and state courts located in Hamilton County, Ohio have "exclusive jurisdiction" over disputes arising from their agreement, the Court denies the Motion to Dismiss and orders the parties to show cause no later than April 1, 2026, why the Counterclaims should not be dismissed.

**Background Facts**

Plaintiff All Pro Capital Funding, LLC.  ("All Pro")  brings this action for Judgment on a Promissory Note and Foreclosure as the result of Defendant Northeast Ohio Neighborhood Health Services, Inc.'s ("NEON") default on its loan obligations to All Pro.  All Pro is a

Delaware company with its principal place of business in New Jersey.  Its members are citizens of New Jersey and Virginia.  NEON is an Ohio-based corporation.  Because the amount in controversy exceeds $75,000, the case is before the Court on its diversity jurisdiction.

On May 27, 2025, Plaintiff All Pro filed its Complaint and an Emergency Motion for Appointment of Receiver.  According to its Complaint, All Pro provides private equity real estate investment opportunities while NEON operates community health centers.  On May 31, 2022, All Pro and Defendant Northeast Ohio Neighborhood Health Services, Inc. entered into a commercial loan agreement wherein All Pro agreed to lend NEON $11,000,000 with an interest rate of 11% per annum in exchange for a promissory note and mortgage on various real properties owned by NEON.  Also, the agreement gave All Pro a security interest in various personal property of NEON.  The maturity date on the loan agreement was June 1, 2023.  In May of 2023, the parties agreed to extend the maturity date for an additional six months until January 1, 2024 in exchange for an increased interest rate of 14% per annum.  NEON defaulted on the Note.  Under the terms of the mortgage, All Pro has the right to foreclose and obtain a Receiver for the properties in question.

Upon default and pursuant to a Deposit Account Control Agreement ("DACA"), All Pro transferred funds from NEON's account totaling $4,190,000, leaving a remaining balance of $8,613, 222.50 due and owing All Pro on the underlying loan.

According to All Pro, NEON stopped paying on its obligations to All Pro in September of 2024.  After briefing, the Court granted the Emergency Motion for Appointment of a Receiver but NEON motioned the Court to stay the appointment order while the parties negotiated a settlement.  All Pro opposed the motion and the Court heard oral arguments on the same.  The

Court denied the Motion to Stay but before it issued is appointment order, NEON appealed the granting of the Emergency Motion.  The Sixth Circuit affirmed the Court's ruling on the Emergency Motion but the parties jointly moved the Court to stay proceedings in light of their agreement to allow NEON time to obtain additional funding.  NEON failed to obtain additional funding and All Pro moved to lift the stay, withdrew its Motion for Emergency Appointment of a Receiver and asked the Court to withdraw its appointment order and allow All Pro to move for summary judgment.  The Court lifted the stay, granted the motion to withdraw the emergency motion, vacated its order appointing a receiver and set a briefing schedule for summary judgment.  All Pro has filed its summary judgment motion but it is not yet ripe for ruling.

**NEON's Counterclaims**

According to its Answer and Counterclaim, NEON is one of the oldest Federally Qualified Healthcare Centers, having been in existence for over fifty years.  It services between five thousand and ten thousand patients in underserved communities a year and employs over two hundred and fifty employees.

Due to a series of unfortunate events including fire at one of its facilities, a cyberattack and fraud by an insider, NEON experienced serious financial pressure.  These pressures required NEON to seek funding from what it terms "unconventional lenders" like All Pro.  On May 31, 2022, NEON entered into an Commercial Loan Agreement with All Pro wherein it borrowed $11 million with a twelve month repayment term.  Under the terms of the Agreement, $1.5 million was held as additional collateral for All Pro in a Fifth Third Bank account maintained by NEON.  The Agreement further required NEON to deposit insurance proceeds in to the Fifth Third Account.  The parties then entered into the DACA that made all the funds in the account

3

transferable to All Pro upon default.  All Pro further charged NEON a loan origination fee of $412,500.00.  The $11 million loan was collateralized with a lien on all of NEON's assets and the loan included an interest rate of 11%.  In the event NEON failed to pay the balance on the loan after 12 months All Pro was entitled to an additional 2% for a six month extension.  NEON was unable to pay the balance with the six month extension so All Pro granted a further six month extension but with an additional charge of $570,000.00 and extension fee of $220,000.00.  Finally, there was a last extension that included a cognovit judgment provision, attorneys fees of $1,650,000.00 and an increase in the interest rate to 14%.

NEON ultimately was unable to pay the balance at the last maturity date and All Pro issued its notice of default and proceeded to enforce its rights under the agreements, including the transfer of the Fifth Third Account assets totaling $4,190,000.00 which it then offset from the balance owed.  However, NEON contends it was insolvent as a result and that All Pro was an under-secured creditor.  Thus, the transfer of the funds from the Fifth Third Account to All Pro pursuant to the DACA agreement had the effect of transferring funds from NEON with a value of one hundred cents on the dollar to reduce debt held by All Pro that was not worth one hundred cents on the dollar.  Consequently, Neon argues the transfer was not for reasonably equivalent value and allowed All Pro to improve its position vis-a-vis other creditors of NEON and violates Ohio's fraudulent conveyance statute and/or constitutes a preferential transfer under Ohio law.

At paragraph 11 of the DACA agreement it reads in pertinent part:

The parties hereto agree and consent to the **exclusive jurisdiction of the federal and state courts having a situs in Hamilton County, Ohio, for any actions arising out of this Agreement**. Each of Company and Secured Party hereby irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding.  (Emphasis

added).

(ECF #1 Ex. 10 pgID. 424).

There being no question the Counterclaims in this case arise from the DACA agreement, the Court holds that the parties agreed to the exclusive jurisdiction of the federal or state courts of Hamilton County, Ohio to resolve such claims.  Therefore, the Court denies the Motion to Dismiss and orders the parties to show cause no later than April 1,  2026, why the Counterclaims should not be dismissed per the parties DACA jurisdiction agreement.

**IT IS SO ORDERED.**

**DATE: 3/25/2026**          _s/Christopher A. Boyko_
                             **CHRISTOPHER A. BOYKO**
                             **United States District Judge**

5